AETNA INSURANCE COMPANY, Appellant,

v.

William M. O'KEEFFE, Deputy Commissioner, Sixth Compensation District, et al., Appellees.

No. 22133.

United States Court of Appeals
Fifth Circuit.

Feb. 21, 1966.

Robert P. Gaines, Beggs, Lane, Daniel, Gaines & Davis, Pensacola, Fla., for appellant.

Angus G. Andrews, DeFuniak Springs, Fla., Clinton Ashmore, U. S. Atty., Stewart Carrouth, Asst. U. S. Atty., Tallahassee, Fla., Morton Hollander, Florence Wagman, Roisman, Attys., Dept. of Justice, John W. Douglas, Asst. Atty. Gen., Washington, D. C., for appellees.

Before JONES and THORNBERRY, Circuit Judges, and SLOAN, Senior District Judge.

SLOAN, Senior District Judge:

This is an appeal by Aetna Insurance Company from a final decree of the district court, dismissing its complaint for a mandatory injunction to the Deputy Commissioner for the Sixth Compensation District. The decree in effect affirmed the action of the Deputy Commissioner in awarding benefits to appellee Walter Thomas Dykes, hereinafter referred to as claimant, under the Nonappropriated Fund Instrumentalities Act.

The complaint was filed by Aetna Insurance Company hereinafter referred to as the carrier, against William O'Keeffe, Deputy Commissioner for the Sixth Compensation District, hereinafter referred to as the deputy and claimant.

The case was, in effect, an appeal from a compensation order entered by the deputy on August 1, 1963. Only questions of law were raised in the district court. The complaint alleged it should be set aside and the claim dismissed for two reasons. (1) That the claimant was not covered by the Act, and (2) that there was no substantial evidence to support the deputy's finding that the claimant was permanently and totally disabled by the injury.

By finding for the deputy and claimant the district court held that the claimant was covered by the Act and that the deputy's findings were supported by substantial evidence.

In this appeal the carrier relies upon only one error—the finding by the district court that the deputy had jurisdiction over the claim.

The carrier's contention that the deputy lacked jurisdiction rests on two arguments. (1) That the Nonappropriated Fund Instrumentalities Act does not cover a "member of the crew", and (2) that this claimant is a member of the crew.

The questions presented here are:

1. Is an "employee" of a nonappropriated fund instrumentality within the meaning of the Nonappropriated Instrumentalities Act, 5 U.S.C. § 150k–1, excluded from coverage if such employee is a member of a crew of a vessel?

2. If so, was the claimant under the facts here a member of the crew of a vessel?

It is undisputed that the claimant was employed by the Central Base Fund at Eglin Air Force Base, a nonappropriated fund instrumentality within the meaning of the Nonappropriated Fund Instrumentalities Act, 5 U.S.C. § 150k–1.

The carrier and the claimant entered into a stipulation as to the claimant's employment and duties from which it appears that:

The claimant was employed as a deck hand aboard the Eglin Queen, a vessel sixty-three feet, five inches in length, about fifteen feet in beam, that is powered by two diesel engines of one hundred sixty-five horsepower each and is rigged for bottom fishing and trawling. The vessel carries twenty passengers and is about twenty tons in gross weight. Title to the vessel is held by Central Base Fund of Eglin Air Force Base, Florida. It is used to take military personnel, their dependents and house guests, out into the Gulf of Mexico for pleasure fishing. Central Base Fund charges each passenger $3.00 per day and loses about $7,000 per year in the operation of the vessel.

Among the duties of the claimant as a deck hand were the normal duties of a deck hand in the operation of a vessel of that size, together with the preparation of bait, and assisting passengers in fishing.

"Nonappropriated fund" activities, such as post exchanges, are operated for the convenience of armed forces personnel, and are as the name suggests—self supporting, that is, they are not supported by funds appropriated by Congress.

In 1942 the Supreme Court in Standard Oil Company of California v. Johnson, 316 U.S. 481, after describing the operation of post exchanges, said at page 485, 62 S.Ct. 1168, at page 1170, 86 L.Ed. 1611:

" * * * government officers, under government regulations, handle and are responsible for all funds of the exchange which are obtained from the companies or detachments composing its membership. Profits, if any, do not go to individuals. They are used to improve the soldiers' mess, to provide various types of recreation, and in general to add to the pleasure and comfort of the troops.

"From all of this, we conclude that post exchanges as now operated are arms of the government * * *."

After this decision the status of civilian employees of these instrumentalities were in doubt.

To resolve this doubt, Congress enacted what is now 5 U.S.C. § 150–k the second section of which, as added by Congress required the instrumentalities to " * * * provide their civilian employees, by insurance or otherwise with compensation for death or disability incurred in the course of employment."

Problems arose in the administration of the compensation program and Congress by Public Law 85–538 § 1, 72 Stat. 397 amended the section to provide for adjudication of claims of civilian employees of nonappropriated fund instrumentalities of the armed forces by judicial tribunals established by the Secretary of Labor under the Longshoremen's and Harbor Workers' Act, such amendment is now 5 U.S.C. § 150k–1.[1]

1. In pertinent part—§ 150k—1 Same; death or disability compensation; definitions; compensation districts; judicial proceedings; regulations; exclusiveness of remedy.

(a) The Longshoremen's and Harbor Workers' Compensation Act shall apply with respect to the disability or death resulting from injury, as defined in section 902(2) of Title 33, of such Act, occurring to a civilian employee of any non-appropriated fund instrumentality described in section 150k of this title, subject to the following provisions of this section:

(1) For the purposes of section 150k of this title and this section, the term "employee" in section 902(3) of Title 33 shall include only—

(A) those employees of such nonappropriated fund instrumentalities as are

Only sections or parts of sections 902, 903, and 920 [2] of the Longshoremen's and Harbor Workers' Compensation Act [Title 33 U.S.C. §§ 901 et seq.] are necessary to be considered in determining the question here.

█ It is the contention of the appellant carrier—

" * * * that a claimant who is a member of a crew of a vessel is specifically excluded from coverage by § 902(3). It is on the basis of this exclusion that the carrier contends that the deputy commissioner did not have jurisdiction to make the award."

employed within the continental United States, and

(B) those United States citizens or permanent residents of the United States or a Territory who are employees of such nonappropriated fund instrumentalities outside the continental limits of the United States.

(2) For the purposes of section 150k of this title and this section, the term "employer" in section 902(4) of Title 33 shall include each of the nonappropriated fund instrumentalities described in section 150k of this title.

(3) For the purposes of section 150k of this title and this section, only that part of section 903(a) of Title 33 which precedes the first comma shall apply.

(4) The Secretary of Labor is authorized—

(A) to extend compensation districts established under section 939(b) of Title 33, or to establish new districts to include the areas outside the continental limits of the United States and

(B) to assign to each such district one or more deputy commissioners as the Secretary deems advisable.

2. 3. The Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424 et seq., as amended, provides, in pertinent part (33 U.S.C.):

§ 902. Definitions

When used in this chapter—

(1) The term "person" means individual, partnership, corporation, or association.

(2) The term "injury" means accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, and includes an injury caused by the *willful act of a third person* directed against an employee because of his employment.

(3) The term "employee" does not include a master or member of a crew of any vessel, nor any person engaged by the master to load or unload or repair any small vessel under eighteen tons net.

(4) The term "employer" means an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any dry dock.)

(5) The term "carrier" means any person or fund authorized under section 932 of this title to insure under this chapter and includes self-insurers.

\* \* \* \* \* \* \*

§ 903. Coverage

(a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law. No compensation shall be payable in respect of the disability or death of—

(1) A master or member of a crew of any vessel, nor any person engaged by the master to load or unload or repair any small vessel under eighteen tons net; or

(2) An officer or employee of the United States or any agency thereof or of any State or foreign government, or of any political subdivision thereof.

(b) No compensation shall be payable if the injury was occasioned solely by the *intoxication of the employee or by the willful intention of the employee to injure or kill himself or another.*

\* \* \* \* \* \* \*

§ 920. Presumptions

In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary—

(a) That the claim comes within the provisions of this chapter.

(b) That sufficient notice of such claim has been given.

(c) That the injury was not occasioned solely by the intoxication of the injured employee.

(d) That the injury was not occasioned by the willful intention of the injured employee to injure or kill himself or another.

We disagree.

Congress has extended the coverage of the Longshoremen's and Harbor Workers' Compensation Act so that the act now applies to civilian employees of nonappropriated fund instrumentalities who meet the requirements of 5 U.S.C. § 150k–l(a)(1). To accomplish this Congress changed the coverage provision of the Longshoremen's and Harbor Workers' Compensation Act [33 U.S.C. §§ 903(a)(a)(1) and (a)(2)].

In the Fund Act [5 U.S.C. § 150k–l(a)(3)] Congress directed that only that part of § 903(a) of Title 33 which precedes the first comma shall apply. This had the effect of providing that for the purposes of the Fund Act compensation shall be payable in respect to the death or disability of an employee, and excluding among other things the provision that "[n]o compensation shall be payable in respect of the disability or death of— (1) A master or member of a crew of any vessel * * *."

Congress in the Fund Act for the purposes of that Act, redefined "employer" and "employee".

The Fund Act [5 U.S.C. § 150k–l(a)] provides:

(1) For the purposes of section 150k of this title and this section, the term "employee" in section 902(3) of Title 33 shall include only—

(A) those employees of such nonappropriated fund instrumentalities as are employed within the continental United States and

(B) those United States citizens or permanent residents of the United States or a Territory who are employees of such nonappropriated fund instrumentalities outside the continental limits of the United States.

(2) For the purposes of section 150k of this title and this section, the term "employer" in section 902(4) of Title 33 shall include each of the nonappropriated fund instrumentalities described in section 150k of this title.

It is the contention of the appellant carrier that the definition of "employee" in the Fund Act is an addition to, rather than substitute for the definition of "employee" in the Longshoremen's and Harbor Workers' Compensation Act.

With this contention of appellant, we disagree.

We agree with the District Court,

"* * * that the deputy commissioner correctly and properly construed and applied the applicable statutes and, conversely concludes that the construction sought to be placed here, by the carrier, on the Acts of Congress cited by it is strained and untenable."

The judgment is affirmed.

 Campbell & Andrews, attorneys for claimant, were allowed a fee of $450.00 for services in connection with the prosecution of the claim before the deputy commissioner. They have filed a motion asking that this court fix an additional fee for services rendered in connection with the review and appeal proceedings. Upon consideration of the motion and in accordance with § 928 of Title 33 U.S.C.A. the attorneys for the claimant are awarded an additional fee of $300.00 for their services.